IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

SIKESTON OUTLET MALL, LLC,           )
CLAY WINFIELD, BONNIE WINFIELD,      )
CHARLES H. DEVERS, THE CHARLES H.    )
DEVERS REVOCABLE TRUST DATED         )          Cause No. _____
MAY 24, 2005, TIMOTHY N. KAISER,     )
FIRST AMENDED AND RESTATED           )
REVOCABLE LIVING TRUST OF            )          Division No.
TIMOTHY N. KAISER DATED FEBRUARY     )
10, 2005, and MERIDIAN LAND COMPANY, )
                                     )                 **13**
        Plaintiffs,                  )
                                     )
    vs.                              )
                                     )
CB RICHARD ELLIS, INC.,              )
Serve Registered Agent:              )
CT Corporation                       )
120 South Central Avenue             )
Clayton, MO 63105                    )
Telephone: (314) 863-0803            )
                                     )
    and                              )
                                     )
DOUGLAS A. ZINK,                     )
CB Richard Ellis, Inc.               )
8112 Maryland Avenue, Ste. 101       )
Clayton, MO 63105                    )
                                     )
        Defendants.                  )

## PETITION
### Professional Negligence

### COUNT I

COMES NOW Plaintiff Sikeston Outlet Mall, LLC, by and through its attorneys, The

Limbaugh Firm, and, for its claim against Defendant Douglas A. Zink, states to the Court as

follows:

1.     Plaintiff Sikeston Outlet Mall, LLC (hereinafter Plaintiff) is a Limited Liability Company authorized to do business, and doing business, in the State of Missouri. Its principal place of business is located in Scott County, Missouri.

2.     Defendant CB Richard Ellis, Inc. (hereinafter Defendant Ellis) is a corporation. Defendant Ellis was incorporated and is lawfully organized in the State of Missouri and doing business in the State of Missouri, with its principal place of business located in St. Louis County, Missouri, at 8112 Maryland Avenue, Ste. 101, Clayton, MO 63105.

3.     Defendant Douglas A. Zink (hereinafter Defendant Zink) is an individual residing in St. Louis County, Missouri. At all relevant times, he was employed by Defendant Ellis in its Clayton, Missouri office at 8112 Maryland Avenue, Ste. 101, Clayton, MO 63105.

4.     In May of 2005, Plaintiff entered into an agreement to purchase real estate located in Scott County, Missouri on which Sikeston Factory Outlet Stores was being operated. A condition of the agreement between Plaintiff and the owner of the real estate was that the real estate had to appraise for an amount equal to or greater than the purchase price, which was $5,600,000. A second condition of the purchase agreement was that Plaintiff had to obtain financing of $4,750,000 or more at an interest rate of not greater than 6% per annum.

5.     Sikeston Outlet Mall, LLC sought financing with Regions Bank. Regions Bank committed to that financing, but a condition of the financing was that a competent appraisal be prepared and that the property must appraise for $5.6 million or more.

6.     Regions Bank arranged for Defendant Ellis to perform the appraisal on this Scott County, Missouri real estate in June of 2005.

7.     Plaintiff paid for the appraisal.

8.      The appraisal was actually performed by Zink, an employee of Defendant Ellis. Defendant Zink submitted an appraisal report to Regions Bank by transmittal letter dated June 22, 2005.

9.      Defendant Zink, in preparing the appraisal report and submitting the appraisal report, was acting within the scope and course of his employment with Defendant Ellis.

10.     The appraisal was prepared negligently by Defendant Zink. The appraisal reached a valuation of $5,660,000. That was substantially in excess of the actual value of the property at the time. Had the property been appraised using due care by a reasonably careful and competent appraiser, the valuation would have been at least 29% less.

11.     While preparing the appraisal, Defendant Zink failed to use that degree of care, skill and learning ordinarily used under the same or similar circumstances by other members of his profession. Defendant Zink's negligent performance was beneath the required standard of care in several respects, including, but not limited to, the following:

A.      There was insufficient analysis of the market for outlet stores for this market area and for this specific location;

B.      There was insufficient analysis as to traffic counts along Interstate Highway 55. Defendant Zink did not identify the destinations north and south of this location and did not analyze whether potential traffic along Highway 55 would likely stop by this mall location. An analysis of these issues is important to determine the viability of an outlet mall at this specific location;

C.      The "highest and best use" analysis of the subject real estate was completely lacking any data or reasoning. Defendant Zink stated his opinion with no information cited to support it. Defendant Zink's opinion was grossly erroneous. A

3

proper analysis would have included data and reasoning about the market demand and the economic feasibility of the use of this property as an outlet mall;

D.     In the "site valuation" of the appraisal, Defendant Zink used only old and out of date transactions. Defendant Zink gave no explanation about the old data nor did he give any explanation of why such old data was used. Comparable land sales were in 1998, 1999 and 2000, which were five to seven years prior to the date of this appraisal. Such old data with no explanation suggests that Defendant Zink did not take sufficient time to do necessary research to competently complete the appraisal;

E.     Defendant Zink also valued the property using the "income" approach. In using that approach, he estimated market rent by using five comparable properties. The five comparable properties had grossly disparate terms. For example, two had triple net leases, two had gross leases and one had leases which varied. Even though the rents were based on very different terms, Defendant Zink did not include any mention of any significant difference when determining that the market rent should be $8 per square foot. The appraisal was done negligently in this regard in that rents should have been adjusted to equal terms before analyzing and using them as comparables to determine the market rent that should be paid on a per square foot basis. Furthermore, the appraisal was negligently performed in that the only stated basis for an $8 per square foot rental value was Defendant Zink's conclusion that comparables ranged in price from $5 to $15 per square foot. Despite this analysis which had a range of difference of 300%, there was no documentation or factual support for concluding that market rent should be $8 per square foot. The analysis of rent comparables was completely inadequate and insufficient;

4

F.     Defendant Zink gave a limited analysis of the rent roll. There were 22 tenants, eight of which had leases that were expiring within the next twelve months. Two of the 22 were already month to month tenants. Two tenants were operating under bankruptcy. The fact that several of the leases, as noted above, could have ended within the next 12 months had an enormous difference on the rentals that the owner of the property could legitimately expect to receive. Lease expiration date is an important factor that a competent appraisal would recognize because such an analysis is an indicator of the reliability of the income stream. A competent appraiser would have recognized that a minimum of 10 of the 22 lessees could easily have terminated their leases, and that less lessees would greatly affect the income flow that a potential owner of the property could reasonably expect. A competent appraisal would have used a discounted cash flow analysis using actual lease terms rather than a simple direct capitalization rate which was used in this appraisal;

G.     Defendant Zink incorrectly evaluated the expenses, failing to note that there were no expenses for other payroll costs other than $36,800 per year for management costs. Historic payroll expenses in the pertinent timeframe would have ranged from approximately $124,000 per year to approximately $131,000 per year plus payroll taxes, which would have added another $17,000 to $19,000 to that figure. Thus, expenses, by this omission alone, are obviously understated by at least $100,000 per year. Defendant Zink was negligent in failing to account for this payroll and giving no explanation as to why it was not included in the estimated expenses;

H.     Defendant Zink was also negligent by basing his evaluation on methods that included the net operating expenses, which were blatantly wrong. In his appraisal,

5

Defendant Zink used the cost approach and the sales comparison approaches but both depended on the net operating income. If the net operating expenses were wrong, which they clearly were and should have been recognized as such by a competent appraiser, all three approaches to value were wrong. Standard competent appraisal techniques would require a comparison of the actual net operating income based on historical figures, including the actual net operating expenses. Defendant Zink disregarded the historical figures that he was given;

I.      The errors set out in subparagraph H above were amplified because Defendant Zink used a method of determining value in which a multiplier of the net operating income was used. For example, if expenses were understated by $50,000 per year, then the net operating income would have been overstated by $50,000 per year and the appraisal, using a multiplier based on a cap rate of 10%, would have resulted in a value which would have been overstated by at least $500,000. In actual fact, Defendant Zink made up his own operating expenses which greatly inflated the net operating income and, with the multiplier, caused the appraisal to be between $1.5 million and $2.01 million higher than it should have appraised for using generally accepted appraisal techniques;

J.      Historical figures available to Defendant Zink showed that in 2002, 2003, and 2004, the expenses had been $3.79, $3.95, and $3.62 per square foot, respectively. Defendant Zink, without any legitimate basis, concluded that expenses should have been $3.05 per square foot. As a direct result of that error, made without justification or explanation, his estimated net operating income was $4.89 per foot, whereas the historical net operating income figures, based on the figures available to Defendant Zink,

6

were $3.32, $3.01 and $3.79 per square foot for the years 2002, 2003, and 2004, respectively. Thus, Defendant Zink concluded that the net operating income "should have been" 29% higher than the highest reported actual income. By using net operating income in each component of valuing the property, this error resulted in the bottom line of the appraisal being at least 29% higher than it should have been using legitimate appraising techniques;

K.      Defendant Zink's sales comparison approach was also erroneous in that his opinion of value was based on "comparable" sales that he picked as being those comparable sales that had the most similar income per square foot. By erroneously calculating the income per square foot at the subject real estate, the comparables were unreliable because they were really not comparables after all;

L.      Defendant Zink did not analyze rental comparables properly;

M.      Defendant Zink made an additional significant error in his expense analysis (and at least indirectly in his income analysis) by assuming that additional tenants would be brought in with zero to minimal expense. At a minimum, bringing in a new tenant to a space requires some remodeling expenses and, in many cases, substantial additional expenses to successfully recruit the new tenant. All of these expenses were totally ignored by Defendant Zink; and

N.      Simple, direct capitalization was used instead of using a discounted cash flow model, which would have been more appropriate in this particular case.

12.      As a direct result of the negligently prepared appraisal, Region's Bank made the loan to Plaintiff. Furthermore, the sale of the real estate, contingent on the appraisal and financing, went forward.

7

13.    As a direct result of the negligence of Defendant Zink, Plaintiff has been damaged. The sales agreement would not have been closed at that price, thus saving the operating losses incurred by Plaintiff. Plaintiff would also not have the continuing liability to Regions Bank. At this time, Regions Bank is owed a debt exceeding the fair market value of the property. The exact dollar amount of Plaintiff's loss cannot be precisely determined at this moment, but in an arm's length sale, the deficiency still owing to Regions Bank would be at least $700,000 above the value of the collateral, and the deficiency at foreclosure would likely be approximately $2,000,000.

14.    Alternatively pleading, Plaintiff states that had the appraisal been prepared in accord with generally accepted appraisal practices, the other potential result would have been a substantial alteration of the price. Had the sales price been equal to the proper appraised value of the property, then Plaintiff would have been able to cash flow the property based on a sales price of $3,900,000 rather than the $5,600,000 price that was actually paid for the property.

WHEREFORE, Plaintiff prays that this Court enter Judgment in its favor and against Defendant Zink in an amount sufficient to compensate Plaintiff for its damages. Plaintiff prays for such other and further relief as the Court may deem proper under these circumstances.

## COUNT II

COMES NOW Plaintiff, by and through its attorneys, The Limbaugh Firm, and, for its claim against Defendant CB Richard Ellis, Inc., states to the Court as follows:

1.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 of Count I of this Petition.

2.    All conduct of Defendant Zink was done within the scope and course of his employment and/or agency with Defendant Ellis.

3.      All conduct of Defendant Zink was done to further the business interests of Defendant Ellis and were done as a part of the work Defendant Zink was hired by Defendant Ellis to perform.

4.      Defendant Ellis, as master, is responsible for all conduct of Defendant Zink, its servant, which were within the scope and course of his employment and/or agency with Defendant Ellis.

WHEREFORE, Plaintiff prays that this Court enter Judgment in its favor and against Defendant Ellis in an amount sufficient to compensate Plaintiff for its damages. Plaintiff prays for such other and further relief as the Court may deem proper under these circumstances.

## COUNT III

COME NOW all Plaintiffs, other than Plaintiff Sikeston Outlet Mall, LLC, by and through their attorneys, The Limbaugh Firm, and, for their claim against Defendant CB Richard Ellis, Inc., states to the Court as follows:

1.      Plaintiffs Clay Winfield, Bonnie Winfield, Charles H. Devers, The Charles H. Devers Revocable Trust Dated May 24, 2005, Timothy N. Kaiser, First Amended and Restated Revocable Living Trust of Timothy N. Kaiser dated February 10, 2005, and Meridian Land Company (hereinafter Guarantor Plaintiffs) reallege and incorporate herein by reference paragraphs 1 through 14 of Count I and paragraphs 1 through 4 of Count II of this Petition.

2.      The Guarantor Plaintiffs signed as guarantors of the Regions Bank loan referred to in Count I and have all been sued in this Court pursuant to those guaranties for $4,230,507.90 plus interest, costs and attorney fees.

3.      As a direct result of the negligence of Defendant Zink, the Guarantor Plaintiffs signed the guaranties. But for the negligent appraisal performed by Defendant Zink, none of the Guarantor Plaintiffs would have signed the guaranties.

4.      As a direct result of the negligence of Defendant Zink, the Guarantor Plaintiffs have been damaged in that each faces liability exposure exceeding $4.2 million. While the exact damages cannot now be precisely calculated, the Guarantor Plaintiffs will have to incur fees and costs to obtain attorneys in addition to whatever liability amounts may be determined, if any.

WHEREFORE, Guarantor Plaintiffs pray that this Court enter Judgment in their favor and against Defendant Zink in an amount sufficient to compensate Guarantor Plaintiffs for their damages. Guarantor Plaintiffs pray for such other and further relief as the Court may deem proper under these circumstances.

## COUNT IV

COME NOW the Guarantor Plaintiffs, by and through their attorneys, The Limbaugh Firm, and, for their cause of action against Defendant Ellis, state to the Court as follows:

1.      The Guarantor Plaintiffs reallege and incorporate by reference paragraphs 1 through 14 of Count I, paragraphs 1 through 4 of Count II, and paragraphs 1 through 4 of Count III of this Petition.

WHEREFORE, Guarantor Plaintiffs pray that this Court enter Judgment in their favor and against Defendant Ellis in an amount sufficient to compensate Guarantor Plaintiffs for their damages. Guarantor Plaintiffs pray for such other and further relief as the Court may deem proper under these circumstances.

Respectfully submitted,

THE LIMBAUGH FIRM

By _____

   J. Michael Payne #28733
   407 N. Kingshighway, P.O. Box 1150
   Cape Girardeau, MO  63702-1150
   Telephone:  (573) 335-3316
   Facsimile: (573) 335-0621
   Email for J. Michael Payne sent to:
   peggy@limbaughlaw.com

ATTORNEYS FOR PLAINTIFF

11