```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                            EASTERN DIVISION

SIKESTON OUTLET MALL, LLC.,     )
et al.,                         )
                                )
              Plaintiffs,       )
                                )
         v.                     )   No. 4:10 CV 1419 DDN
                                )
CB RICHARD ELLIS, INC., and     )
DOUGLAS A. ZINK,                )
                                )
              Defendants.       )
```

**MEMORANDUM AND ORDER REMANDING ACTION TO STATE COURT**

This action is before the court on the motion of defendant Douglas A. Zink to dismiss for failure to state a claim upon which relief may be granted (Doc. 8) and upon the request of the plaintiffs that the action be remanded to the Missouri circuit court (Doc. 11). The parties have filed memoranda augmenting their positions. (Docs. 22, 23.)

On June 21, 2010, plaintiff Sikeston Outlet Mall, LLC (SOM LLC) and others filed suit against defendants CB Richard Ellis, Inc. (CBRE) and Douglas Zink in the Circuit Court of St. Louis County. CBRE removed the case to this court based on diversity of citizenship[1] jurisdiction and plaintiffs' assertedly fraudulent joinder of defendant Zink. 28 U.S.C. §§ 1332(a), 1441(a). But for the presence of defendant Zink in the case, there would be the complete diversity of citizenship necessary for subject matter jurisdiction under § 1332 and qualification for removal to this court under § 1441(a). See footnote 1; In re Prempro Products Liability Litigation, 591 F.3d 613, 619 (8th Cir. 2010) ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship"). By defendant CBRE's removal allegations, there would be complete diversity of

---

[1]Defendants allege that plaintiff SOM LLC is a Missouri corporation with its principal place of business in Missouri. Defendants allege that the other plaintiffs are "members" of SOM LLC and citizens of Florida (Clay Winfield), Florida (Bonnie Winfield), Missouri (Charles H. Devers), Missouri (The Charles H. Devers Revocable Trust Dated May 24, 2005), Illinois (Timothy N. Kaiser), Illinois (First Amended and Restated Revocable Living Trust of Timothy N. Kaiser Dated February 10, 2005), and Illinois (Meridian Land Company). Ultimately, defendants allege that SOM LLC is a citizen of Illinois, Missouri, and Florida. (Doc. 1 at 2.) Defendants allege that defendant CBRE is a Delaware corporation with its principal place of business in California and that defendant Zink is a citizen of Missouri. (Id. at 3.)

citizenship, if defendant Zink's motion to dismiss under Rule 12(b)(6) is sustained or if the court concludes that he was fraudulently joined. The Eighth Circuit in Prempro recently stated the appropriate analysis for the fraudulent joinder issue:

> After removal, a plaintiff may move to remand the case to state court, and the case should be remanded if is appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. . . . All doubts about federal jurisdiction should be resolved in favor of remand to state court.
>
> Courts have long recognized fraudulent joinder as an exception to the complete diversity rule. . . . Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal. . . . When determining if a party has been fraudulently joined, a court considers whether there is any reasonable basis in fact or law to support a claim against a nondiverse defendant.

Id. at 619-20 (citations omitted). Stated another way, to defeat a claim of fraudulent joinder, plaintiff needs only to allege "a reasonable basis for believing Missouri might impose liability" upon the nondiverse party. Wilkinson v. Shackelford, 478 F.3d 957, 964 (8th Cir. 2007). This reasonable-basis-for-potential-liability standard appears to favor the plaintiff at least as much if not more than does the failure-to-state-a-claim standard of F.R.Civ.P. 12(b)(6).[2] Cf., Wells'

---

[2]To overcome a motion to dismiss under Rule 12(b)(6), a complaint must include enough facts to state a claim for relief that is *plausible* on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.

A complaint must be liberally construed in the light most favorable to the plaintiff. See id. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id.
(continued...)

Dairy, Inc. v. Am. Indus. Refrig., Inc., 157 F. Supp.2d 1018, 1034 (N.D. Iowa 2001).   In their four-count petition, plaintiffs allege the following.  In May 2005, plaintiff SOM LLC agreed to purchase real estate located in Scott County, Missouri, on which the Sikeston Factory Outlet Stores were operated.  The purchase agreement was subject to two conditions:  First, the real estate had to appraise for at least the purchase price of $5,600,000.  (Petition at 2, ¶ 4.)[3]  Second, SOM LLC had to obtain financing of $4,750,000 or more at an interest rate of not greater than 6% per annum.  (Id.)

Plaintiffs allege that SOM LLC sought financing with Regions Bank. Regions Bank committed to the financing, with a condition that "a competent appraisal be prepared and that the property must appraise for [$5,600,000] or more."  (Id. at ¶ 5.)  Regions Bank arranged for defendant CBRE to perform the appraisal in June 2005, and SOM LLC paid for the appraisal.  (Id. at ¶¶ 6, 7.)

Plaintiffs allege that the appraisal was performed by defendant Douglas A. Zink, an employee of CBRE.  Zink worked out of CBRE's principal place of business in Clayton, Missouri.  Zink submitted to Regions Bank an appraisal report that evaluated the real estate at $5,660,000.  Plaintiffs allege that this appraisal was more than the actual value of the property at that time and that a proper appraisal would have been at least 29 per cent less.  (Id. at ¶¶ 8, 9, 10.)

Plaintiffs allege that "Zink, in preparing the appraisal report and submitting the appraisal report, was acting within the scope and course of his employment" with defendant CBRE.  (Id. at 3, ¶ 9.)  They further allege that all of Zink's conduct was done to further the business

---

[2](...continued)
To warrant dismissal, the plaintiff's entitlement to relief must fall short of being plausible.  Id. at 569 n.14, 570.

[3]Defendants have filed a copy of the purchase agreement and point out, and the court agrees, that its express provisions do not include a condition that the property appraise for $5,600,000 or more.  (Doc. 23-1.)  This document was not attached to the plaintiffs' petition.  If this were the only allegation of plaintiffs that there was an indication that a minimum appraisal was important to the purchase of the property, defendants' argument that such was not the case would have more traction.  However, as the court observes, plaintiffs have also alleged that Regions Bank conditioned the financing on an appraisal of $5,600,000 or more.

interests of CBRE and was done as part of the work he was hired by CBRE to perform. Plaintiffs allege that CBRE, as master, is responsible for all conduct of Zink, its servant, which was within the scope and course of his employment and/or agency with CBRE. (Id. at 9, ¶ 4.)

Plaintiffs allege that Zink, while preparing the appraisal, failed to use that degree of care, skill and learning ordinarily used under the same or similar circumstances by other members of his profession. They further allege that Zink's negligent performance was beneath the required standard of care. (Id. at 3-7, ¶ 11.)

Plaintiffs allege that the named plaintiffs other than SOM LLC (guarantor plaintiffs), signed as guarantors of the Regions Bank loan to SOM LLC. All have been sued in another lawsuit in the Circuit Court of St. Louis County pursuant to those guaranties for $4,230.507.90 plus interest, costs, and attorneys fees.

In Count I, plaintiff SOM LLC asserts a claim for negligence against Zink. In Count III, the guarantor plaintiffs reallege and incorporate by reference the allegations contained in Count I as the basis of their negligence claims against Zink. In Counts II and IV, SOM LLC and the guarantor plaintiffs assert claims for negligence against CBRE arising out of Zink's allegedly negligent performance.

Defendant Zink argues that the petition does not state a claim against him under Missouri law, because he was the agent of a disclosed principal (CBRE). Plaintiffs argue to the contrary and that, because there is not complete diversity of citizenship necessary for subject matter jurisdiction, the court should remand the action to the Missouri circuit court. In its reply, defendant Zink argues that the petition is insufficient to state a claim. (Doc. 12.) As stated, at the invitation of the court, the parties supplemented their positions regarding whether or not the case should be remanded. (Docs. 22, 23.)

Both sides invoke Missouri law for the rules of decision by which to test plaintiffs' allegations. Movant Zink argues that, because he is alleged to be an agent of a disclosed principal, he is not liable for the claims in the petition. Plaintiff SOM LLC argues that in certain cases, a third party, although not in privity, has a claim for the alleged negligence of a professional who renders an opinion upon which the third party relies to his detriment.

Defendant Zink has correctly stated the general principle. State ex. rel. William Ranni Associates, Inc. v. Hartenbach, 742 S.W.2d 134,

140 (Mo. 1987)(en banc), and Hardcore Concrete v. Fortner Ins. Servs., Inc., 220 S.W.3d 350 (Mo. Ct. App. 2007), hold that an agent is not personally liable to third parties for economic losses caused by acts performed within the scope of the agent's authority.

In Ranni, the Missouri Supreme Court held that an agent was not liable to the beneficiaries of a life insurance policy for the negligent handling of the claim. 742 S.W.2d at 140-41. There, the plaintiffs claimed the agent's delay in paying life insurance policy benefits caused them to lose the use of the policy proceeds, i.e., economic damage. Id. at 136. The court held that Ranni, as agent of a disclosed principal, was not personally liable to the plaintiffs for economic loss caused by acts performed within the scope of his authority.

In Hardcore, plaintiffs sued Med James, an insurance agency, for negligence. The trial court entered judgment on the jury's negligence verdict. On appeal, Med James argued that as the agent of a disclosed principal, Lloyd's of London (Lloyd's), it had no personal liability in negligence as a matter of law. The appellate court held that Med James was the agent of a disclosed principal, Lloyd's, and was acting on behalf of Lloyd's and within the scope of its authority when it dealt with Hardcore. The appellate court found that, when Med James prepared the endorsement forms for the insurance policy, it was acting solely for its disclosed principal, Lloyd's. Accordingly, if Hardcore suffered any loss from Med James's actions in preparing the endorsement forms, its remedy was to sue the disclosed principal, Lloyd's, not Med James, the agent. Under these circumstances, it was Lloyd's that was responsible for any purported misconduct of its agent. 220 S.W.3d at 359.

The Restatement of Agency confirms this general principle. "An agent's breach of a duty owed to the principal is not an independent basis for the agent's liability to a third party." Restatement (Third) of Agency, § 7.02. The comments state:

> Conduct by an agent that breaches a duty owed by the agent to the principal does not subject the agent to liability to a third party who suffers pure economic loss as a result unless the agent's conduct also breaches a duty owed by the agent to the third party. Most cases hold that an agent does not owe a duty to a third party when the agent's negligent conduct causes only pure economic loss to a third party.

Id. at Comment "d."

Under certain circumstances, however, as plaintiffs argue, the agent of a disclosed principal may be sued along with the principal. In <u>Owens v. Unified Investigations & Sciences, Inc.</u>, 166 S.W.3d 89 (Mo. Ct. App. 2005), Owens was seriously injured when her rented apartment residence caught fire and the smoke detectors failed to operate properly. The apartment building owner's insurer hired Unified Investigations & Sciences, Inc. (UIS) to investigate the fire. UIS assigned the fire to Herschell Alexander to investigate the cause and origin of the fire. In doing his investigation and preparing his report, Alexander did not obtain and preserve the apartment's smoke detectors, which were later discarded. Owens sued UIS and Alexander for his failure to exercise reasonable care in his fire investigation because he failed to preserve the smoke detectors for Owens's use in suing the manufacturer and sellers of the smoke detectors. The trial court granted the defendants' motion for summary judgment, holding that the defendants had no duty to Owens. On appeal, the Missouri Court of Appeals affirmed.

In <u>Owens</u> the court held that the general rule that requires privity between the parties as a basis for suit

> is designed to protect contractual parties from exposure to unlimited liability and to prevent burdening the parties with obligations they have not voluntarily assumed. . . . But when application of this rule is not necessary to protect the contractual parties, or when it would produce results contrary to justice and public policy, our courts make exceptions . . . The liability of a contractual party to those not in privity is determined on a case-by-case basis. . . . **The proper inquiry is whether the defendant has assumed a duty of reasonable care to prevent foreseeable harm to the plaintiff.** The existence and scope of the duty is determined by the contractual obligations the defendant undertook and the circumstances of the case.

166 S.W.3d at 92 (internal citations omitted) (bolding added). The court held that the circumstances under which the investigation was performed did not indicate any reason for Alexander to obtain and preserve the smoke detectors, that the defendants were not aware that the investigation was to benefit anyone other than the insurance company, or that anyone other than the insurance company would rely on the investigation to preserve physical evidence.

Further, the court in <u>Owens</u> stated that Owens's argument regarding foreseeability of harm to the plaintiff was based upon the well-

established exceptions to the privity requirement involving circumstances where the alleged negligence involved the plaintiff's safety or where the court

> imposed a duty despite the lack of privity because the defendant had a reason to expect that the plaintiff would rely on or benefit from the services the defendant performed.

Id. at 93-94. In Owens the court held that the work of the cause and origin investigator did not affect Owens's safety and that the defendants had no reason to believe that the insurance company intended to provide Owens with the investigation results. Consequently, Owens's inability to identify and sue the makers of the smoke detectors was not a foreseeable harm. Id. at 94.

The allegations of plaintiffs against defendant Zink in this action clearly do not implicate their safety. However, the issue of whether the plaintiffs' allegations involve an expectation on Zink's part that plaintiffs would rely on his work bears closer study.

The Missouri Court of Appeals in Owens cites two Missouri cases, Miller v. Big River Concrete, LLC, 14 S.W.3d 129 (Mo. Ct. App. 2000), and Aluma Kraft Mfg. Co. v. Elmer Fox & Co., 493 S.W.2d 378 (Mo. Ct. App. 1973). In Miller v. Big River Concrete, in the construction of their home, plaintiffs hired ET Concrete to pour their foundation. ET Concrete ordered concrete for the job from Big River Concrete. After concerns arose that the poured concrete was deficient, Big River had John Wolf test the strength of the concrete. Wolf was told that plaintiffs wanted to be present when the concrete was tested. Wolf tested the concrete without plaintiffs present and made his report to Big River. Big River reported to the plaintiffs that the foundation tested sufficient. After further construction was done, plaintiffs hired another company to test the concrete. This testing indicated that the concrete was inadequate. Plaintiffs sued Wolf and others over the condition of the constructed home, against Wolf for negligent misrepresentation and negligence. The circuit court granted Wolf summary judgment, because plaintiffs did not justifiably rely on Wolf's work and because there was no privity of contract between Wolf and the plaintiffs. The Missouri Court of Appeals reversed the summary judgment. In doing so, it stated the policy reasons for liability of a defendant not in privity with third party claimants: "(1) avoidance of unlimited liability to an unlimited number of persons and (2)

avoidance of burdening those who contract with obligations they would not voluntarily assume." 14 S.W.3d at 134.  More specifically, the court identified factors to be weighed:

> (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to [plaintiff]; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to defendant's conduct; and (6) the policy of preventing future harm.

Id.  The court concluded that Wolf could be liable to plaintiffs, because there was evidence that Wolf knew that the results of his testing would be relied upon by the plaintiff homeowners and he could foresee the harm to plaintiffs if his testing results were inaccurate.  This foreseeability of the damages to plaintiffs would not expose him to unlimited liability.   Id.

In Aluma Kraft Mfg. Co., plaintiff Solmica Inc. negotiated with T.J. Bottom, owner of Aluma Kraft, to buy shares of Aluma Kraft.  In this regard, defendant Fox & Company, for many years the regular auditors of Aluma Kraft, was engaged to audit the company.  Solmica alleged that Fox & Company knew Solmica would rely on the report in the purchase decision and that in reliance on the auditor's report Solmica closed the purchase transaction.  Thereafter, Solmica sued Fox & Company for negligence in the audit report.  The Missouri circuit court sustained the defendants' motion to dismiss.  The Missouri Court of Appeals reversed, holding in part that the defensive lack of privity was overcome by Solmica's allegations that the auditors knew the purpose for the audit and knew that Solmica would rely upon the audit report. 493 S.W.2d at 383.

The Missouri Court of Appeals applied these principles in Owens and concluded that there was no basis for believing that the defendants had any reason to know that Owens would rely on the cause and origin investigation to preserve the smoke detectors, or that the insurance company intended to provide the investigation results to any of the apartment building's occupants. The court concluded that the harm Owens alleged was not foreseeable. 166 S.W.3d at 94.  The court also applied the six factors quoted above and concluded that there was no public policy reason to impose a duty upon Alexander to protect Owens from the harm she alleged.  Id.

In the case at bar, plaintiffs' allegations make clear that Zink was the agent of a disclosed principal, CBRE. Plaintiffs allege that Regions Bank arranged for CBRE to perform an appraisal; that Zink performed the appraisal as an employee of CBRE; that in preparing and submitting the appraisal report, Zink was acting within the scope and course of his employment and/or agency with CBRE; and that Zink's conduct was done to further the business interests of CBRE and as part of the work CBRE hired him to perform.

The issue before the court on whether or not to remand, as set out in Prempro, is whether there is "any reasonable basis in fact or law" to support SOM LLC's claim against Zink. Or more factually grounded, the issue is whether SOM LLC's allegations against Zink indicate that he himself had any reason to know that his appraisal report would have a substantial effect on SOM LLC's interests. Plaintiffs argue that "Zink knew or should have known of SOM LLC's reliance on his appraisal . . . ." (Doc. 22 at 3.) Plaintiffs do not expressly allege this in their state court petition. However, the petition alleges facts which indicate that such is plausible. Zink worked for CBRE out of its principal place of business in Clayton, Missouri. Plaintiffs allege that the financing with Regions Bank[4] was conditioned on an appraisal of at least $5,600,000. Zink's appraisal was for $5,660,000. And plaintiff SOM LLC paid for the appraisal. Upon the allegations before it, the court cannot conclude that Zink is a fraudulently joined defendant. Cf. Hutchen v. Wal-Mart Stores East I, LP, 555 F. Supp.2d 1013 (E.D. Mo. 2008)(manager employee of grocery store held not fraudulently joined).

---

[4]As explained in footnote 3, defendants have provided some evidence outside the pleadings that the plaintiffs' written purchase agreement with the property owners did not include a condition of a minimum appraisal of $5,600,000, as plaintiffs allege. It is noteworthy that the state court petition did not cite the written agreement in support of this allegation. Nevertheless, the court has not considered this allegation in deciding that the plaintiffs' pleading allegations otherwise can support the inference that defendant Zink knew or should have known the importance to plaintiffs of a minimum appraisal of $5,600,000. As further indicated by the court above, plaintiffs also allege that the financing agreement with Regions Bank also contained such a condition. And it was Regions Bank that dealt directly with the appraiser.

The presence of defendant Douglas A. Zink in the suit prevents complete diversity of citizenship and the action must be remanded to the Missouri circuit court. Without subject matter jurisdiction, this court has no authority to rule the merits of defendant Zink's motion to dismiss filed in this court.

As stated above, the standards for determining whether plaintiffs have fraudulently joined defendant Zink and whether plaintiffs have sufficiently stated a claim in their pleadings are different. Therefore, this court, by concluding that it lacks subject matter jurisdiction, does not decide whether or not plaintiffs' pleaded allegations against Zink are sufficient as a matter of Missouri law, i.e. whether or not the allegations pass muster as a policy matter for indicating the potential liability of an agent of a disclosed principal.

Given the closeness of the pleading issue before this court and federal law's requirement that substantial doubts about this court's subject matter jurisdiction should be resolved in favor of remand, this court has no choice but to remand the action.

Therefore,

**IT IS HEREBY ORDERED** that the motion of defendant Douglas Zink to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. 8.) is denied without prejudice as moot.

**IT IS FURTHER ORDERED** that this action is remanded to the Circuit Court of St. Louis County for further proceedings.

                                              /S/    **David D. Noce**
                                        **UNITED STATES MAGISTRATE JUDGE**

Signed on October 29, 2010.